FILED
JUN 0 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VERNETTA TURNER-JONES<br>4446 E Street SE, #2<br>Washington, D.C. 20019<br><br>       Plaintiff,<br><br>v.<br><br>BENNING HEIGHTS COOPERATIVE<br>4430 E Street SE<br>Washington, D.C. 20019<br><br>Serve: Registered Agent<br>      Kenneth Dixon<br>      205 Lastner Lane<br>      Greenbelt, MD 20770<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | VERIFIED COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF, DAMAGES,<br>AND DEMAND FOR JURY TRIAL<br><br>Case: 1:07-cv-01024<br>Assigned To : Leon, Richard J.<br>Assign. Date : 06/07/2007<br>Description: CIVIL RIGHTS-NON. EMPLOY. |

## NATURE OF THE ACTION

1. This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of handicap in the provision of housing. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 et seq. and the D.C. Human Rights Act, D.C. Code §2-1401.01 et seq.

2. Plaintiff Vernetta Turner-Jones is a tenant living in an apartment owned, managed and operated by Defendant.

## PARTIES

1. Plaintiff Vernetta Turner-Jones ("Ms. Turner-Jones") lives in the Benning Heights Cooperative complex in the southeast quadrant of the District of Columbia. Ms.

RECEIVED
MAY 1 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Turner-Jones has been living at 4446 E Street SE, #2 since October 1, 2002 and through the filing of this complaint.

2. Defendant Benning Heights Cooperative, Inc. is a Maryland corporation with its principal place of business in Washington, DC.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§1331 (federal question), 1343(a)(4) (jurisdiction over civil rights cases), 1367 (supplemental jurisdiction), and 42 U.S.C. §3613 (enforcement of the Fair Housing Act by private persons). Venue is proper in this district pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

### A. Benning Heights Cooperative Apartment Complex

4. Since October 2002 and through the date of the filing of this complaint, Ms. Turner-Jones has lived at 4446 E Street, SE, #2 in the Benning Heights Cooperative complex.

5. Benning Heights Cooperative is a large housing complex with several buildings arranged around courtyards and has several parking lots.

6. A small parking lot with ten marked parking spots is located next to the building where Ms. Turner-Jones's unit is located.

7. As a general policy, parking at Benning Heights Cooperative is on a first-come, first-served basis. Until August 2006, none of the parking spaces at the complex was marked to indicate that it is reserved for people with mobility impairments.

8. Benning Heights Cooperative's House Rules indicate that residents are to display parking stickers on the back of the front rearview mirror of their vehicles.

9. Contrary to the terms of the House Rules, Benning Heights Cooperative does not issue parking stickers to residents. Thus, non-residents can, and frequently do, park in resident lots.

### B.  Ms. Turner-Jones's Difficulties in Accessing Her Home

10. Ms. Turner-Jones is a handicapped person as defined by the Fair Housing Act, 42 U.S.C. § 3602(h), and the D.C. Human Rights Act, D.C. Code 2-1401.02(5A). As a result of health conditions that cause chronic back pain and substantially limit her mobility, Ms. Turner-Jones uses a cane when she needs to be on her feet for more than approximately five minutes. If she attempts to walk long distances, she experiences weakness in her legs and is in danger of injuring herself from falling. It is particularly difficult for Ms. Turner-Jones to walk long distances in rain, snow, sleet, and icy weather. These health conditions have existed since Ms. Turner-Jones moved in to her unit.

11. Since October 2002 and through the date of the filing of this complaint, Ms. Turner-Jones has either owned a motor vehicle or had the use of a family member's vehicle.

12. Because of her mobility impairment, Ms. Turner-Jones has a parking placard issued by the District of Columbia which permits her to park in any parking space designated for persons with disabilities. Ms. Turner-Jones uses the placard by hanging it on the rear view mirror of her vehicle.

13. Until August 2006, Ms. Turner-Jones frequently had difficulty finding an available parking spot near her home. Often, she was not able to park in the lot next to

her building, and was forced to park her vehicle on the street or in a different parking lot, requiring her to walk a substantial distance to her home.

### C. Ms. Turner-Jones's Efforts to Obtain a Reasonable Accommodation and Benning Heights Cooperative's Retaliation

14. At the time Ms. Turner-Jones signed her lease agreement, she asked Gladys A. Brown, a rental clerk employed by Benning Heights Cooperative, whether there were designated parking spots for people with disabilities. Ms. Brown told her there were not.

15. In approximately February 2003, Ms. Turner-Jones complained about the lack of disability parking spots near her home to Ms. Brown. Ms. Brown instructed Ms. Turner-Jones to send a letter to Helen Smith, who at the time was the president of the Board of Benning Heights Cooperative. Ms. Turner-Jones sent a letter requesting a disability parking spot to Ms. Smith. No action was taken in response to Ms. Turner-Jones's complaint.

16. At a meeting between residents of Benning Heights Cooperative and David Bogans, current president of the Board of Benning Heights Cooperative, in approximately September 2005, Ms. Turner-Jones again asked that spaces be designated as disability parking. She also stated that non-residents were parking in Benning Heights parking lots, making it difficult for residents such as herself to park near their homes. Again, no action was taken in response to Ms. Turner-Jones's request.

17. On May 10, 2006, Ms. Turner-Jones sent a letter to Mr. Bogans requesting a designated disability parking spot. She received no reply to the letter.

18. On May 31, 2006, Ms. Turner-Jones called Mr. Bogans, and he said that the issue would be taken up at a Board meeting that month.

19. On June 7, 2006, Ms. Turner-Jones's vehicle was parked in a spot in the parking lot nearest to her home. Chantise Batts, an employee of the property management office of Benning Heights Cooperative, blocked Ms. Turner-Jones's vehicle in with Ms. Batts's own vehicle. Ms. Turner-Jones went to the property management office to protest the blocking in of her vehicle. Ms. Batts told Ms. Turner-Jones that every time Ms. Turner-Jones parked in that spot, she would block Ms. Turner-Jones in. Ms. Turner-Jones asked Ms. Batts whether that was a threat, and the employee said that it was.

20. At the time Ms. Turner-Jones's car was blocked in, she knew only Ms. Batts's first name. On June 7, 2006, a short time after Ms. Batts told her that she intended to threaten her, Ms. Turner-Jones returned to the property management office to find out Ms. Batts's full name and title. No one in the office would give her this information.

21. On June 12, 2006, through her attorney, Ms. Turner-Jones again requested in writing that she be given a designated disability parking spot. Ms. Turner-Jones also requested that her vehicle cease to be blocked in when she parked near her home.

22. On June 21, 2006, through counsel, Benning Heights Cooperative requested additional documentation of Ms. Turner-Jones's disability. Counsel for Benning Heights Cooperative stated that this was due to a belief that a number of people with disability parking placards do not actually have significant mobility impairments. A letter from Ms. Turner-Jones's doctor was mailed and faxed to counsel for Benning Heights Cooperative on July 12.

23. On June 26, 2006, at approximately 10am, Ms. Turner-Jones called the property management office and asked to speak to Mr. Bogans. Ms. Batts replied, "He's not here," and slammed the phone down, hanging up on Ms. Turner-Jones. Ms. Batts has

continued to treat Ms. Turner-Jones in a similarly unprofessional and disrespectful manner each time Ms. Turner-Jones has attempted to contact the property management office.

24. In July 2006, Mr. Bogans told Ms. Turner-Jones that Benning Heights Cooperative did not have to give her a parking spot.

25. On July 31, 2006, pursuant to a request, counsel for Ms. Turner-Jones faxed to counsel for Benning Heights Cooperative a diagram and photos indicating the parking spot that was closest to Ms. Turner-Jones's home.

26. On August 10, 2006, counsel for Ms. Turner-Jones received a fax stating that Benning Heights Cooperative would provide a designated parking spot at the requested space for handicapped persons with a permit from the District of Columbia.

27. On August 18, 2006, workers arrived at the parking lot and began preparations to designate a spot for the use of handicapped persons in a different area of the lot than Ms. Turner-Jones had requested. After counsel for Ms. Turner-Jones left a message for counsel for Benning Heights Cooperative, the matter was resolved and the agreed-upon spot was designated for the use of handicapped persons with a posted sign and a sign painted on the ground.

28. On August 28, 2006, Ms. Turner-Jones attempted to ask Mr. Bogans a question, at which time he responded that he was sick of her, and that she should just move out.

29. On August 29, 2006, Ms. Turner-Jones saw Kurt Proctor, a maintenance worker employed by Benning Heights Cooperative, leave Ms. Batts's unit. Ms. Turner-Jones attempted to ask Mr. Proctor a question about what residents should do when they saw youths smoking marijuana in the parking lot. Mr. Proctor responded to the question in a

hostile manner. He cursed at Ms. Turner-Jones and told her, "You just don't know what I'm going to do to you," and said, "You got a lawyer? I got a lawyer, too." He also said, "That's why we don't fix nothing in your apartment." At one point, Ms. Batts and Marlene Pheeney, a neighbor of Ms. Turner-Jones, rushed out of Ms. Batts's apartment toward Ms. Turner-Jones in a threatening manner, saying, "We're going to get you." Ms. Turner-Jones returned to her apartment.

30. Shortly after the encounter with Mr. Proctor, a police officer arrived at Ms. Turner-Jones's door stating that Mr. Proctor had alleged that Ms. Turner-Jones had hit him. Ms. Turner-Jones understood that the police officer was a friend of Mr. Proctor's. The officer refused to give Ms. Turner-Jones his badge number, and appeared amused by the situation. After speaking to Ms. Turner-Jones, the officer left.

31. A few hours later, a second officer arrived and told Ms. Turner-Jones that Mr. Proctor had reported an "altercation" between himself and Ms. Turner-Jones. Ms. Turner-Jones disputed Mr. Proctor's characterization of the encounter, and the officer left.

32. In fall 2006, LaTisha Baynes, the mother of two of Ms. Turner-Jones's grandchildren submitted an application to live in Benning Heights Cooperative, and her application was accepted. It is Ms. Turner-Jones's understanding that subsequently the management of Benning Heights Cooperative has become aware of the relationship between Ms. Baynes and Ms. Turner-Jones. A number of apartments have become available since Ms. Baynes's application was accepted. The only unit offered to Ms. Baynes through the date of the filing of this complaint was substandard, which Ms. Baynes has nonetheless accepted.

33. Since moving to Benning Heights Cooperative, Ms. Turner-Jones has made repeated requests to move from her current unit to a duplex unit. A number of such units have become available, but Ms. Turner-Jones has not been offered any of those units.

34. Ms. Turner-Jones has made repeated requests since January 2006 for repairs to her unit, including the repair of chipped and peeling paint in her living room, bathroom, and bedroom; and the repair of the cabinet under the kitchen sink, which had caved in. These repairs were not made until, at Ms. Turner-Jones's request, an inspector from the D.C. Department of Consumer and Regulatory Affairs visited her unit on September 1, 2006 and issued a Housing Violation Notice to Benning Heights Cooperative.

    D.    <u>Effect of Benning Heights Cooperative's Resistance to Providing a Reasonable Accommodation and Retaliation Against Ms. Turner-Jones</u>

35. The resistance of Benning Heights Cooperative to providing an inexpensive, easily implemented accommodation clearly required by law has caused Ms. Turner-Jones substantial continuing harm, including severe humiliation, embarrassment, and emotional distress.

36. The abuse, threats, and retaliation against Ms. Turner-Jones for asserting her rights under federal and local law have likewise caused Ms. Turner-Jones substantial continuing harm, including fear, severe humiliation, embarrassment, and emotional distress.

37. Ms. Turner-Jones has additionally been deprived of the opportunity to have two of her grandchildren (currently ages 6 and 3) live in close proximity to her until April 2007, and of the opportunity to be transferred to a duplex apartment.

E. <u>Failure of the Board of Benning Heights Cooperative to Effectively Address the Retaliation Against Ms. Turner-Jones</u>

38. Due to her distress regarding the retaliation against her, Ms. Turner-Jones asked to meet with the Board of Benning Heights Cooperative in early September 2006 to discuss what had happened to her. She was told by Mr. Bogans to do so in writing.

39. On September 7, 2006, Ms. Turner-Jones hand-delivered a written request for a meeting with the Board of Benning Heights Cooperative to Mr. Bogans. Counsel for Ms. Turner-Jones faxed a copy of the request to counsel for Benning Heights Cooperative on September 12, 2006. As of the filing of this Complaint, Ms. Turner-Jones has received no response from Benning Heights Cooperative.

40. At all times relevant to the events described above, the employees of Benning Heights Cooperative were acting within the scope of their employment as employees, agents, and/or representatives of Benning Heights Cooperative. The acts described above were carried out: (a) at the direction of, and with the consent, encouragement, knowledge, and ratification of the defendant; (b) under the defendant's authority, control, and supervision; and/or (c) within the scope of employment.

41. As a direct and proximate result of defendant's actions, Ms. Turner-Jones has suffered, and in the future will continue to suffer, economic loss, humiliation, embarrassment, mental and emotional distress, and a deprivation of her right to equal housing opportunities.

42. Through the actions of its employees, agents, and/or representatives described above, defendant acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for Ms. Turner-Jones's federally and locally protected rights.

FIRST CAUSE OF ACTION

(Fair Housing Act, 42 U.S.C. §3604(f)(3)(B))

43. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

44. The foregoing actions of Defendant constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §§3604(f)(2), 3604(f)(3)(B).

SECOND CAUSE OF ACTION

(Fair Housing Act, 42 U.S.C. §3617)

45. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

46. Defendant has retaliated against Plaintiff and further coerced, intimidated, threatened and interfered with Plaintiff's exercise of her rights granted or protected by the Fair Housing Act, 42 U.S.C. §3617.

THIRD CAUSE OF ACTION

(D.C. Human Rights Act, D.C. Code §2-1401.01, et seq.)

47. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

48. The foregoing actions of defendants constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in

violation of the D.C. Human Rights Act, D.C. Code §2-1402.21(d)(2)(B), §2-1402.31(a)(1), §2-1402.62, and §2-1402.68.

## FOURTH CAUSE OF ACTION

(D.C. Human Rights Act, D.C. Code §2-1401.01, et seq.)

49. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

50. Defendants have retaliated against Plaintiff and further coerced, intimidated, threatened and interfered with Plaintiff's exercise of her rights granted or protected by the D.C. Human Rights Act, D.C. Code §2-1402.31(a)(1), §2-1402.61, §2-1402.62, and §2-1402.68.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant her the following relief:

(1) enter a declaratory judgment finding that the foregoing actions of the defendants violate the Fair Housing Act, 42 U.S.C. §3601 et seq.; the D.C. Human Rights Act, D.C. Code §2-1401.01, et seq.;

(2) enter a permanent injunction directing the Defendants and their directors, officers, agents and employees to take all affirmative steps necessary to

    remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3) award compensatory damages to Plaintiff in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, humiliation, embarrassment, and emotional distress that has been caused by the conduct of the defendants alleged herein;

(4) award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

(5) award Plaintiff her reasonable attorneys fees and costs pursuant to 42 U.S.C. §3613(c)(2); and

(6) order such other relief as this Court deems just and equitable.

CERTIFICATE OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Plaintiff Vernetta Turner-Jones, pursuant to L.Cv. R. 83.2(g), certify that they are representing Plaintiff without compensation.

This is the 11th day of May, 2007.

I, Vernetta Turner-Jones, swear upon penalty of perjury, that I have read the foregoing answer and that the facts therein are true to the best of my knowledge, information, and belief.

                                                          Vernetta Turner-Jones

SUBSCRIBED AND SWORN TO before me this 3rd day of May, 2007, in the District of Columbia.

My Commission Expires: 11-14-2011                         NOTARY PUBLIC, D.C.

                                                        Respectfully submitted,

                                                        Vytas V. Vergeer, #447121
                                                        Autumn M. Elliott, #498528
                                                        Bread for the City Legal Clinic
                                                        1640 Good Hope Road, SE
                                                        Washington, DC 20020
                                                        (202) 561-8587
                                                        (202) 574-1536 (fax)

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

07-1024 RJL

## I (a) PLAINTIFFS

Vernetta Turner-Jones

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE  NP

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

Benning Heights Cooperative

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF...

Case: 1:07-cv-01024
Assigned To : Leon, Richard J.
Assign. Date : 06/07/2007
Description: CIVIL RIGHTS-NON. EMPLOY.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|   | PTF | DFT |   | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☒ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 3601

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  ☐   **DEMAND $** 0   Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO   If yes, please complete related case form.

DATE  SIGNATURE OF ATTORNEY OF RECORD  NCD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.